# STATE OF MICHIGAN

# COURT OF APPEALS

SHERRI L. RICHARDS,

      Plaintiff-Appellee/Cross-Appellant,

v

WILLIAM H. RICHARDS III,

      Defendant-Appellant/Cross-
      Appellee.

FOR PUBLICATION
June 2, 2015
9:10 a.m.

No. 319753
Delta Circuit Court
Family Division
LC No. 12-021435-DO

Before: GLEICHER, P.J., and K. F. KELLY and SERVITTO, JJ.

K. F. KELLY.

    Defendant appeals as of right from a judgment of divorce, contesting the trial court's division of marital assets and further contesting the award of spousal support. Plaintiff cross-appeals, contesting the trial court's refusal to award her the attorney fees incurred as a result of defendant's failure to follow the trial court's orders. We affirm the trial court's property distribution, as well as the trial court's decision to award spousal support. However, we vacate the spousal support provision to the extent that the trial court may have limited spousal support for a term of six years in contravention of MCL 552.28. We also vacate the order to the extent it denied plaintiff's request for attorney fees because the trial court erred as a matter of law in considering plaintiff's ability to pay when, in fact, the request was made under MCR 3.206(C)(2)(b) that allows a trial court to award attorney fees that are incurred as a result of defendant's failure to follow prior court orders.

## I. BASIC FACTS AND PROCEDURAL HISTORY

    The parties were married on December 20, 1980. At the time of the divorce, both plaintiff and defendant were 53 years old. Throughout the marriage, defendant had been employed as a successful urologist, and partly owned a number of medical practices, i.e., BayCare Clinic, BayCare Ambulatory Service, and BayCare Health Services (collectively BayCare), until he was diagnosed with Parkinson's disease and the disease progressed to the point where he could no longer practice. He also held interests in two medical device companies. Plaintiff is a registered nurse, but stopped working in 1989 to care for and home school the couple's children, as well as manage the parties' finances. A back problem would make it difficult to resume her nursing career as a bedside nurse, but plaintiff had returned to

-1-

school for her bachelors degree and a master's degree, hoping to obtain employment teaching nursing.

During the marriage, plaintiff earned between $500,000 and $800,000 yearly, and the parties amassed substantial assets, including a primary residence in Gladstone, appraised at approximately $650,000, and a home in Houghton worth approximately $225,000. The parties also had substantial savings accounts. Near the time plaintiff filed for divorce, defendant had begun receiving proceeds from two disability insurance policies through Northwestern Mutual Insurance Company, which totaled approximately $22,000 a month; defendant was to receive the payments from one policy until he turned 65 and the payments from the other until he turned 68. Defendant also began receiving social security disability payments. Defendant also received distributions representing his interest in BayCare.

Defendant admitted that he began having an affair in October of 2011. According to plaintiff, the circumstances of defendant's relationship with the other woman caused a great deal of stress with the other woman engaging in stalking behavior and the woman's boyfriend threatening defendant. Defendant acknowledged the affair but also maintained that the breakup of the marriage was due to longer-term problems in the marriage.

In March 2012 the court heard plaintiff's motion for temporary spousal support and held that each party was to receive an equal share of defendant's monthly disability income, with plaintiff to receive an additional $10,000 a month to pay the parties' expenses on both of their homes. This resulted in a calculated "allowance" to each party of $6,000 a month. On June 5, 2012, a stipulated order was entered concerning the BayCare distributions and also contained an "increase" in the monthly allowance so that each party would receive $8,500 a month. Thereafter, following an allegation that defendant was not complying with either the initial or new order, the trial court ordered all future income to be placed in defendant's attorney's trust account, and reordered that $6,000 a month in allowance be awarded to each party, as well as $10,000 a month to be given to plaintiff to pay the parties' expenses.

Testimony was presented concerning defendant's shortfalls and missed payments of the spousal support amounts during the proceedings. Plaintiff also testified that defendant took more than his allotted $6,000 a month at times. Plaintiff testified that she had paid her attorney to date; however, she expected to have another $13,000 in fees, for a total of $33,000. She maintained that from between $12,000 and $14,000 of the amount was to determine where the various moneys had been placed, particularly by defendant, and that he should pay that amount toward her attorney fees.[1]

In addition, the court heard testimony concerning the handling, or alleged mishandling, of various bank accounts. At the time the parties separated, the trial court stated the parties had approximately $502,347.03 in assets in various bank accounts, based on plaintiff's calculations. Plaintiff removed $250,000 from these accounts and placed them in accounts under her

---

[1] Plaintiff proposed findings of fact indicated that $6,000 of additional attorney fees were spent as a result of defendant's misconduct.

individual name. Plaintiff admitted that she used a portion of this money, in addition to her monthly allowances, ostensibly for college expenses for her and the children and for taxes.

At the close of proofs, the parties submitted proposed findings of fact. The trial court generally adopted plaintiff's financial calculations. The trial court awarded plaintiff 55 percent of the parties' marital assets, with some exceptions, such as an equal split of the marital home and an award of the Houghton property to defendant. The trial court also awarded to plaintiff, 50 percent of defendant's disability payments for six years as temporary spousal support. The trial court declined to award plaintiff attorney fees which she claimed to be entitled to due to defendant's misconduct during the divorce proceedings. The trial court entered an amended judgment of divorce on December 11, 2013. Defendant contests the trial court's judgment to the extent that it awarded an unequal division of the marital estate and provided for spousal support. Plaintiff cross appeals from the trial court's refusal to order defendant to pay plaintiff a portion of her attorney fees.

## II. SPOUSAL SUPPORT

Defendant argues that the facts of this case weigh heavily against the award of spousal support. At the time of divorce, the parties were without debt. After the property division, plaintiff's situation was one of financial stability, and she received over $1.8 million in the property settlement. Plaintiff had received substantial lump sum payments, as well as periodic payments, during the pendency of the proceedings. Defendant claims that the trial court erred when it failed to consider that plaintiff no longer resided in the marital home and took a majority of the personal property located in both homes. Defendant contrasts plaintiff's health and her potential to earn income with defendant's health and inability to work and concludes that the spousal support award was punitive. We disagree.

Whether to award spousal support is in the trial court's discretion, and the "trial court's decision regarding spousal support must be affirmed unless we are firmly convinced that it was inequitable." *Gates v Gates*, 256 Mich App 420, 432-433; 664 NW2d 231 (2003). This Court reviews underlying findings of fact for clear error. *Id*. at 432. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Id.* at 432-433.

The object in awarding spousal support is to balance the incomes and needs of the parties so that neither will be impoverished, and spousal support is to be based on what is just and reasonable under the circumstances of the case. *Moore v Moore*, 242 Mich App 652, 654; 619 NW2d 723 (2000). When considering an award of spousal support, the following are among those factors that should be weighed in the trial court's decision:

> (1) the past relations and conduct of the parties, (2) the length of the marriage, (3) the abilities of the parties to work, (4) the source and amount of property awarded to the parties, (5) the parties' ages, (6) the abilities of the parties to pay alimony, (7) the present situation of the parties, (8) the needs of the parties, (9) the parties' health, (10) the prior standard of living of the parties and whether either is responsible for the support of others, (11) contributions of the parties to the joint estate, (12) a party's fault in causing the divorce, (13) the effect of cohabitation on

a party's financial status, and (14) general principles of equity. [*Olson v Olson*, 256 Mich App 619, 631; 671 NW2d 64 (2003).]

The trial court's decision to award alimony in this case was not an abuse of discretion. Plaintiff was in better health than defendant, but at the time of the divorce, plaintiff earned no income, while defendant received approximately $22,000 a month in disability payments, plus additional money from payments from his BayCare interests. The parties were of the same age, the marriage had lasted over 30 years, and both parties contributed to the establishment of the joint estate. Testimony was presented, and believed by the court, that defendant was at fault for the dissolution of the marriage. The couple's children were adults, and both parties were assisting in paying for the children's college education. We find unpersuasive defendant's claim that plaintiff's living circumstances are more financially stable because she no longer has to bear the expenses of the marital home. Plaintiff will still have living expenses, even after she did not reside in the home. Moreover. "a party should not have to invade property for support . . ." *Olson v Olson*, 256 Mich App 619, 632; 671 NW2d 64 (2003).

The trial court's decision to award alimony was designed to facilitate plaintiff's return to the workforce. Plaintiff testified that she could work and planned to do so. Toward that goal, she testified that she planned to acquire further education, which she and defendant had planned on her doing now that he had retired. Our Supreme Court has upheld a spousal support award designed to provide a party "to assimilate into the workforce and establish economic self-sufficiency." *Friend v Friend*, 486 Mich 1035, 1035; 783 NW2d 122 (2010). Given plaintiff's testimony concerning her education plans, an initial six-year award was not an abuse of discretion. Moreover, as discussed by the trial court, defendant's disability policies were not perpetual; one was to end at age 65 and the other was to end at age 68.

However, we agree with plaintiff that the trial court erred when it ordered spousal support for a fixed time period. The relevant portion of the divorce judgment provides, in part:

> IT IS FURTHER ORDERED that Defendant pay spousal support to Plaintiff in the amount of 50% of his income derived from his Social Security Disability payments and the two Northwestern Mutual Disability payments h[e] receives monthly. The spousal support payments are modifiable on showing of proper cause by either party. This award is limited in time to six (6) years from the date hereof.

Plaintiff correctly notes that a spousal support award may be modified upon petition of the receiving party showing new facts or changed circumstances. MCL 552.28 provides:

> On petition of either party, after a judgment for alimony or other allowance for either party or a child, or after a judgment for the appointment of trustees to receive and hold property for the use of either party or a child, and subject to section 17, the court may revise and alter the judgment, respecting the amount or payment of the alimony or allowance, and also respecting the appropriation and payment of the principal and income of the property held in trust, and may make any judgment respecting any of the matters that the court might have made in the original action.

We have recently reaffirmed that the plain language of MCL 552.28 does not create a "bright-line rule" about when spousal support may be modified. *Loutts v Loutts*, ___ Mich App ___: ____ NW2d ___ (Docket No. 318468, issued February 10, 2015), slip op, p 4-6, app pending. Once a trial court provides for spousal support, it has continuing jurisdiction to modify such an order, even without "triggering language" in the judgment of divorce. *Id.*, quoting *Rickner v Frederick*, 459 Mich 371, 378-379; 590 NW2d 288 (1999).

We read the trial court's judgment to mean that spousal support is not modifiable upon a showing of proper cause after the six-year timeframe. The judgment is simply not clear. To the extent the trial court intended that spousal support would come to a definitive end after six years and could not be revisited, the judgment violates the plain reading of MCL 552.28 and must be vacated.

## III. PROPERTY SETTLEMENT

Defendant next argues that the trial court's property division was inequitable. We disagree.

We consider "the trial court's findings of fact under the clearly erroneous standard. If the findings of fact are upheld, [we] must decide whether the dispositive ruling was fair and equitable in light of those facts." *Sparks v Sparks*, 440 Mich 141, 151-152; 485 NW2d 893 (1992). The trial court's dispositional ruling will be upheld, unless this Court is "left with the firm conviction that the division was inequitable." *Id*. at 152.

Equity serves as the goal for property division in divorce actions. *Id* at 159. Although marital property need not be divided equally, it must be divided equitably in light of a court's evaluation of the parties' contributions, faults and needs. *Id.* at 149-150.

> We hold that the following factors are to be considered wherever they are relevant to the circumstances of the particular case: (1) duration of the marriage, (2) contributions of the parties to the marital estate, (3) age of the parties, (4) health of the parties, (5) life status of the parties, (6) necessities and circumstances of the parties, (7) earning abilities of the parties, (8) past relations and conduct of the parties, and (9) general principles of equity. There may even be additional factors that are relevant to a particular case. For example, the court may choose to consider the interruption of the personal career or education of either party. The determination of relevant factors will vary depending on the facts and circumstances of the case. [*Id*. at 159-160 (citation omitted).]

The trial court must consider all relevant factors but "not assign disproportionate weight to any one circumstance." *Id*. at 158. In addition, this Court defers to a trial court's findings of fact stemming from credibility determinations. *Id.* at 147.

### A. UNEQUAL DISTRIBUTION

The trial court ordered that the marital home be sold and the proceeds split evenly between plaintiff and defendant and awarded defendant the parties' home in Houghton. Otherwise, plaintiff received 55 percent of the marital assets and defendant received 45 percent.

The trial court considered a number of factors as discussed above, including defendant's fault. On appeal, defendant argues that the trial court should have adopted his proposal to divide the property 51/49. In so doing, defendant faults the trial court for not explaining its differential, while essentially ignoring the fact that he did not explain his own proposed differential.

Under the circumstances, we cannot find that the trial court's property settlement constituted an abuse of discretion. According to plaintiff's testimony concerning the facts of defendant's affair, defendant's actions and those of the other woman and her ex-boyfriend were extremely disruptive to plaintiff's life. For example, plaintiff testified that she had to move from her home to the Houghton property to escape harassment, only to then have defendant give the other woman the Houghton address and have the unwanted contact continue. And defendant, who admits that his behavior should have resulted in an unequal property division, cannot show that plaintiff's and trial court's valuations of defendant's behavior were any less valid than his own. The trial court cannot be faulted for choosing one of two reasonable outcomes.

## B. CALCULATION ERRORS

### 1. Monthly Allowance

Defendant argues that he was entitled to a greater share of the marital estate due to a miscalculation in the amount of the proper "allowance" disbursement to plaintiff during June, July and August of 2012. He argues that plaintiff was to receive $8,500 for each of those months rather than the $18,500 reported in defendant's initial proposed findings of fact. While defendant does not provide any discussion for the reason that the initial figure was erroneous, in his motion for reconsideration he stated that "the parties agreed and it was ordered that each receive an allowance of $8,500 not $18,500 which would impact the calculations found on page 11."[2]

There is no record support for defendant's contention. Early in the divorce proceedings, the court heard plaintiff's motion for temporary spousal support and held that each party was to receive an equal share of defendant's $22,000 monthly disability income, with plaintiff to receive an additional $10,000 a month to pay the parties' expenses on both of their homes. This resulted in a calculated "allowance" to each party of $6,000 a month. On June 5, 2012, a stipulated order was entered concerning the BayCare distributions and also contained an "increase" in the monthly allowance each party was to receive to $8,500 a month. Thereafter, following an allegation that defendant was not complying with either the initial or new order, the trial court held a hearing on the allegations, ordered future income to be placed in defendant's attorney's trust account, and again ordered that $6,000 a month in allowance would be awarded to each party, as well as $10,000 a month to be given to plaintiff to pay the parties' expenses. Given these orders, the trial court did not plainly err when it found that plaintiff was entitled to $18,500 for June, July, and August of 2012.

---

[2] The trial court never directly addressed or ruled on the motion for reconsideration, tacitly denying the motion by entering the judgment of divorce.

## 2. BayCare Distributions

Defendant also argues that the trial court erred when it found that defendant had to include $35,000 in BayCare distributions he had received prior to placing the remainder of the received funds into his attorney's IOLTA account without also including plaintiff's $35,000.

In June 2012, defendant was to receive a substantial lump sum payment from BayCare as part of its buy-out of defendant's interest. The parties agreed that they would each receive $35,000 from those proceeds, in addition to their monthly allowance. Although the stipulated order provided that defendant would immediately place the proceeds in his attorney's client trust account, defendant admitted that he skimmed off his share first and then placed the balance in the trust. He then later requested that the trial court divide the proceeds of the trust in half when unforeseen expenses arose. Such a position was incongruous because defendant had already received his share and plaintiff's $35,000 became part of the trust. Moreover, although plaintiff also received $35,000, she placed it into a certificate of deposit as collateral for a loan for one of the parties' children. Under the particular circumstances of this case, we agree with plaintiff that the trial court did not make a calculation error, but rather a judgment call concerning adding defendant's $35,000 back into the marital estate and not adding back her own disbursement.

## 3. Northwestern Mutual Disability Deposits

Defendant next appears to argue that he was not required to deposit $21,950.70 each month into the parties' trust accounts for the months of June, July, August, and September of 2012, representing payments made to defendant from his Northwestern Mutual disability policy. Defendant fails to develop this argument, certainly not to the extent we are able to find clear error in defendant's initial calculations. An appellant may not leave it up to this Court to develop his arguments for him. *Yee v Shiawassee Co Bd of Comm'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002). Because defendant has failed to adequately brief this argument, he has abandoned it. *Id*.

Moreover, even defendant intends to revise his argument below that he was not "required" to deposit this money into the trust account until the trial court's October 1, 2012 order, he still cannot show plain error. The trial court's earlier orders still required defendant to place the moneys from his Northwestern Mutual disability policy into the parties' joint account, which would then be disbursed evenly after the "allowances" and the $10,000 home maintenance payments were paid out. Defendant failed to adhere to the earlier order.

## 4. Marital Bank Accounts

At the time the parties separated, they had significant assets in several marital bank accounts. The trial court stated that these totaled approximately $502,347.03. However, the judgment of divorce included only the $346,470.39 amount as part of the marital estate subject to division. Defendant claims that plaintiff created bank accounts in her own name and siphoned funds from their joint account. He argues that the trial court erred in failing to take such behavior into consideration when dividing the marital property.

The trial court acted equitably and made proper findings when it did not require plaintiff to pay back the money she took from the marital estate for tuition and expenses. Defendant did

not object to plaintiff's use of funds throughout the divorce proceedings, nor did he object at the hearing. Furthermore, in his proposed findings, he did not request that the court require that plaintiff return the money to the marital estate for division, but instead stated that he was leaving the issue for the court to judge.[3] Defendant cannot show how much of the reduction in the account balance was due to plaintiff's removal of the money in the account. Plaintiff testified that the funds were used to pay for her and the children's educational expenses. The trial court equitably decided not to have plaintiff return any money into the account because of how the funds were used.

## IV. ATTORNEYS FEES

In her cross appeal, plaintiff argues the trial court abused its discretion by refusing to award plaintiff attorney fees based on defendant's refusal to comply with the trial court's orders.

We review for an abuse of discretion a trial court's award of attorney fees in a divorce action. *Hanaway v Hanaway*, 208 Mich App 278, 298; 527 NW2d 792 (1995). An abuse of discretion occurs when the result falls outside the range of principled outcomes. *Keinz v Keinz*, 290 Mich App 137, 141; 799 NW2d 576 (2010). However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. *Stallworth v Stallworth*, 275 Mich App 282, 288; 738 NW2d 264 (2007). "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." *Gates*, 256 Mich App at 432-433.

"Attorney fees in a divorce action are awarded only as necessary to enable a party to prosecute or defend a suit" but are also "authorized when the requesting party has been forced to incur expenses as a result of the other party's unreasonable conduct in the course of litigation." *Hanaway*, 208 Mich App at 298. Specifically, MCR 3.206(C) provides:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

---

[3] In his proposed findings of fact, defendant gave the trial court carte blanche to divide defendants' calculated remaining account balances, stating:

> Plaintiff claims that the reduced balance is a result of marital expenditures. Plaintiff received $163,500.00 during the months of separation which was primarily intended for marital and living expenses. Further, she had full access and control to a majority of these bank accounts. Defendant leaves this matter to the Court's judgment in deciding what the value of the accounts should be and their proper distribution at this time.

In addition, in his proposed property division, defendant advocated for an equal division of the remaining funds.

-8-

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that

(a) the party is unable to bear the expense of the action, and that the other party is able to pay, ***or***

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply. [MCR 3.206 (emphasis added).]

Because we have seen this problem in the past, we take this opportunity to clarify that MCR 3.206(C)(2) provides two independent bases for awarding attorney fees and expenses. "In general, 'or' is a disjunctive term, indicating a choice between two alternatives." *Paris Meadows, LLC v City of Kentwood*, 287 Mich App 136, 148; 783 NW2d 133 (2010). "The drafters of statutes are presumed to know the rules of grammar, and statutory language must be read within its grammatical context unless a contrary intent is clearly expressed." *Greater Bethesda Healing Springs Ministry v Evangel Builders & Const Managers, LLC*, 282 Mich App 410, 414; 766 NW2d 874 (2009). As plaintiff points out, we have not clarified the rule in a published opinion. However, in an unpublished opinion, we held that "[t]he Court Rule is phrased as an inclusive disjunction" and "provides two possible avenues to an award." *Kalaydjian v Kalaydjian*, unpublished opinion per curiam of the Court of Appeals, issued September 29, 2011 (Docket No. 298107). "[A]lthough unpublished opinions of this Court are not binding precedent . . . they may, however, be considered instructive or persuasive." *Paris Meadows,* 287 Mich App at 150 n 3.

Whereas MCR 3.206(C)(2)(a) allows payment of attorney fees based on one party's inability to pay and the other party's ability to do so, MCR 3.206(C)(2)(b) considers only a party's behavior, without reference to the ability to pay. As plaintiff points out, the staff comments to the court rule provide:

The April 1, 2003, amendment of MCR 3.206(C), effective September 1, 2003, was suggested by the Michigan Judges Association to (1) reduce the number of hearings that occur because of a litigant's vindictive or wrongful behavior, (2) shift the costs associated with wrongful conduct to the party engaging in the improper behavior, (3) remove the ability of a vindictive litigant to apply financial pressure to the opposing party, (4) create a financial incentive for attorneys to accept a wronged party as a client, and (5) foster respect for court orders.

Here, the trial court specifically found that defendant failed to obey its orders and found that these violations "certainly caused confusion and extra time by all parties involved." Nevertheless, because of the property division and the spousal support award, the trial court refused to award attorney fees to plaintiff. In so doing, it appears that the trial court conflated the two different bases for awarding attorney's fees. Plaintiff alleged facts and provided testimony that included defendant's admissions sufficient to prove that she incurred attorney's fees "because the other party refused to comply with a previous court order, despite having the ability to comply" under MCR 3.206(C)(2)(b). The property and spousal support awards do not affect the fact that plaintiff was forced to incur additional attorney fees due solely to defendant's failure

to comply with the trial court's orders during the divorce proceedings. Plaintiff sought only attorney's fees for the amount related to these failures.

Affirmed in part, vacated in part, and remanded for an evidentiary hearing on the issue of attorney fees. We do not retain jurisdiction.

/s/ Kirsten Frank Kelly
/s/ Elizabeth L. Gleicher
/s/ Deborah A. Servitto