# STATE OF MICHIGAN

# COURT OF APPEALS

MICHAEL ALAN SCHWARTZ,

      Plaintiff-Appellant,

v

SARA OLTARZ-SCHWARTZ,

      Defendant-Appellee.

UNPUBLISHED
August 9, 2018

No. 338291
Oakland Circuit Court
Family Division
LC No. 2013-810233-DO

Before: RIORDAN, P.J., and K. F. KELLY and BOONSTRA, JJ.

PER CURIAM.

In this divorce action, plaintiff appeals by right the order of the trial court, entered on remand from this Court,[1] directing him to pay attorney fees and costs incurred by defendant as a result of plaintiff's unreasonable conduct. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The circumstances of the parties' marital breakdown were summarized by this Court in its previous opinion arising from these divorce proceedings:

> Plaintiff and defendant, both attorneys, were married on December 8, 1973. The marriage produced two children who were adults at the time of the divorce.
>
> In the early 2000s, plaintiff lost approximately $1 million in investments when the stock market crashed. The parties agreed at trial that the initial collapse of their marriage coincided with the loss. However, they also provided extensive testimony regarding their respective perspectives on the subsequent breakdown of their relationship, including the fact that the couple stopped sharing a marital relationship at least 10 years prior to trial. At some point, plaintiff began

---

[1] See *Schwartz v Oltarz-Schwartz*, unpublished per curiam opinion of the Court of Appeals, issued September 22, 2016 (Docket Nos. 324555, 330031, and 330213).

engaging in a long-term affair with Julie Mareski, whom he secretly supported financially for several years prior to the divorce.[2]

In the earlier appeal, this Court held that the trial court had properly awarded attorney fees to defendant based on two instances of plaintiff's misconduct. First, during discovery, defendant issued a single request for admission to plaintiff, asking him to admit

[t]hat you have in the past, for a number of years, provided for the support, or otherwise provided gratuitous financial benefits to another person, other than your immediate family, namely a person with the initials "J.M." to include, but not be limited to phone services, auto lease responsibility, insurance, living expenses, gifts of jewelry, cosmetics, and intimate clothing, veterinary bills, by way of example and not limitation.

On September 24, 2013, plaintiff admitted that he provided support and financial benefits to Mareski, but qualified his admission with the following statement: "The source of most of said support and/or financial benefits was derived either from a loan which was made to the Plaintiff or from an inheritance which he received from his mother upon her death." After a three-day bench trial, the trial court determined that plaintiff had been supporting Mareski since at least 2004, years before he received a loan from his former employer and the inheritance from his mother. Consequently, it awarded attorney fees to defendant for this misconduct, as well as for an additional instance of misconduct related to plaintiff's payment of the mortgage for the parties' marital home. The trial court ultimately ordered plaintiff to pay defendant $68,452.60 in attorney fees.

This Court affirmed the award under the common-law exception permitting recovery of fees a party is forced to incur as a result of the other party's misconduct during the course of litigation. However, because the record did not demonstrate the necessary link between plaintiff's misconduct and the *amount* of attorney fees awarded, this Court remanded the matter to the trial court for a determination of the fees actually incurred as a result of plaintiff's unreasonable conduct.

On remand, defendant filed a brief concerning attorney fees and attached a copy of defense counsel's billing statements, on which defense counsel, James P. Cunningham, had placed check marks next to each entry pertaining to the two issues for which attorney fees had been awarded. Cunningham also testified at an evidentiary hearing about his calculation of the fees sought by defendant. After Cunningham briefly outlined his services by reading some of the descriptions of relevant, marked entries and occasionally commenting on the reason certain types of services were required, plaintiff's attorney cross-examined Cunningham at length about his billing descriptions. Although Cunningham was not always able to remember specific details concerning some of the billing entries, he explained his general reasons for performing certain types of work. Cunningham testified that, because plaintiff had asserted that he had primarily

---

[2] See *Schwartz*, unpub op at 1.

supported Mareski from a loan or inheritance rather than from the marital estate, he conducted extensive discovery regarding plaintiff's finances. He issued subpoenas to plaintiff's banks and credit card companies because he could not rely on plaintiff to provide complete information. A subpoena was also issued to plaintiff's life insurance carrier to determine whether the policy named Mareski or defendant as the beneficiary. Several billing entries referred to depositions, and only plaintiff, defendant, and Mareski were deposed. According to Cunningham, divorce cases do not always require party depositions, even when the case is likely to go to trial. He stated that he would not have deposed the parties but for the "two issues" for which defendant was seeking attorney fees.

After the evidentiary hearing, the trial court issued a lengthy opinion and order setting forth specific findings with respect to each billing entry for which defendant sought payment of attorney fees. To summarize the trial court's individual findings, with regard to the misconduct involving plaintiff's support of Mareski, the trial court disallowed all billing entries that occurred before plaintiff responded to the request for admission. The trial court also disallowed billing entries for work performed by paralegals as being outside the scope of this Court's remand order, as well as billing entries in which, though occurring after the request for admission, Cunningham "could not identify the relationship between this entry and the remanded matters." It allowed charges that it found demonstrated "a sufficient connection to plaintiff's unreasonable conduct," specifically the necessity that Cunningham "audit Plaintiff's financial choices and deduce the information Plaintiff concealed." It also allowed charges related to the depositions, based on Cunningham's testimony that they would not have been necessary but for plaintiff's actions. The trial court also reduced certain charges by one-half, to reflect the fact that, although the charge may have been incurred regardless of plaintiff's misconduct, the misconduct required that extra time be expended on the matter. With respect to plaintiff's misconduct concerning the mortgage, the trial court allowed charges where the billing entry specifically related to the mortgage issue. After addressing whether each entry was related to the misconduct identified by this Court, the trial court stated that Cunningham was a highly credible witness. It also found that

> [t]he extensive discovery, subpoenas, motions, and Ms. Mareski's involvement occurred in great part because of Plaintiff's misconduct. Had Plaintiff's answer to the Request for Admission[] provided the necessary financial information to [Cunningham], the disclosure would have obviated Defendant's expenditure of additional attorney fees.

Based on the foregoing, the trial court found that defendant was entitled to recover fees incurred for "95.67 hours ($30,449.50) related to Plaintiff's unreasonable conduct regarding the Request for Admission, [and] 26.15 hours ($8,986.25) related to the mortgage issue . . . ." This appeal followed. On appeal, plaintiff only challenges the award of attorney fees related to his misconduct concerning his support of Mareski; he does not challenge award of attorney fees for entries related to the mortgage.

## II. STANDARD OF REVIEW

We review for an abuse of discretion a trial court's award of attorney fees in a divorce action. An abuse of discretion occurs when the result falls outside the

-3-

range of principled outcomes. However, findings of fact on which the trial court bases an award of attorney fees are reviewed for clear error. "A finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made." [*Richards v Richards*, 310 Mich App 683, 699-700; 874 NW2d 704 (2015) (quotation marks and citations omitted).]

### III. ANALYSIS

Plaintiff argues that the trial court erred by entering an order for attorney fees without adequately explaining the factual basis for its conclusions and despite defendant's failure to establish a causal connection between plaintiff's misconduct during discovery and the fees awarded. We disagree.

It is well-settled that attorney fees are generally not recoverable as of right in divorce cases—fees may only be awarded when authorized by statute, court rule, contract, or common-law exception. *Reed*, 265 Mich App at 164. At issue in this case is the common-law exception permitting recovery of attorney fees on the basis of misconduct. *Id*. at 165. Under this exception, "an award of legal fees is authorized where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." *Id*., quoting *Stackhouse v Stackhouse*, 193 Mich App 437, 445; 484 NW2d 723 (1992) (quotation marks omitted). To award fees on the basis of misconduct, the trial court must determine that misconduct, in fact, occurred and that the misconduct caused the party seeking fees to incur the fees awarded. *Reed*, 265 Mich App at 165. The party requesting fees bears the burden of proving that the fees were incurred and that the fees requested are reasonable. *Id*. at 165-166.

A party may not merely present a billing statement for approval under this exception; rather, he or she must demonstrate by documentation and testimony what charges can be attributed to the other party's misconduct. See *Augustine v Allstate Ins Co*, 292 Mich App 408, 414; 807 NW2d 77 (2011) (rejecting an award of attorney fees based on testimony from the plaintiff's attorneys that was "replete with speculation, conjecture, and a denial of knowledge"); *Adair v Michigan (On Third Remand)*, 298 Mich App 383, 388; 827 NW2d 740 (2012), rev'd in part on other grounds 494 Mich 852 (2013) (partially rejecting an award of attorney fees when the plaintiff's attorneys could not recall which particular billing entries related to the claim for which the fees had been awarded).

Here, we conclude that the trial court did not clearly err in finding that certain of the charges submitted by defendant were supported by Cunningham's testimony and other record evidence. *Richards*, 310 Mich App at 699-700. By way of example, the trial court awarded attorney fees incurred with respect to defendant's motion for substitute service of a subpoena directing Mareski to appear for a deposition. Cunningham's February 4, 2014 billing entry explicitly referred to the motion by name, and he related other billing entries to work performed in connection with the same motion during his testimony at the evidentiary hearing. In addition, Cunningham further testified that the motion was necessary because Mareski was avoiding service, and her testimony was required to demonstrate the falsity of plaintiff's assertion concerning the extent of his support.

To be sure, Cunningham's recollection, and the billing description, did not always rise to the level of detail described above. But Cunningham did recall many specifics—for example, he testified that entries related to subpoenas were related to plaintiff's discovery response because "there was very little other discovery that had to be done," notwithstanding his inability to recall each specific subpoena. And, as noted, the trial court did evaluate each entry individually, accepting some, rejecting others as having "too tenuous" a connection to plaintiff's misconduct or because Cunningham could not recall specifics, and reducing the amount for some charges to reflect that not all of the time spent was occasioned by plaintiff's misconduct. It is clear that Cunningham's testimony reflected more than speculation, *Augustine*, 292 Mich App at 422, and that the proofs were adequate to allow the court to determine the number of hours reasonably expended due to plaintiff's misconduct, *Adair*, 298 Mich App at 395. In light of the billing entries and Cunningham's testimony, and the trial court's detailed review of each entry, we conclude that the trial court did not clearly err by finding that the services reflected in the billing entries it approved were incurred as a result of plaintiff's misconduct during discovery. *Richards*, 310 Mich App at 699-700.[3]

Affirmed.

/s/ Michael J. Riordan
/s/ Kirsten Frank Kelly
/s/ Mark T. Boonstra

---

[3] Because our remand was limited to "a determination of the expenses resulting from plaintiff's conduct," see *Schwartz*, unpub op at 15, we do not review the trial court's findings concerning the reasonableness of the fees awarded under the other factors found in *Smith v Khouri*, 481 Mich 519, 529-530; 751 NW2d 472 (2008).