# Court of Appeals, State of Michigan

## ORDER

In re Attorney Fees of Michael Skinner

Docket No.    343922

LC No.        14-001354-FC

Michael J. Kelly
Presiding Judge

Jane E. Markey

Elizabeth L. Gleicher
Judges

The Court orders that the July 11, 2019 opinion is hereby VACATED, and a new opinion is attached.

/s/ Michael J. Kelly

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

July 25, 2019
Date

Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* Attorney Fees of MICHAEL SKINNER.

PEOPLE OF MICHIGAN,

Plaintiff-Appellee,

v

CARL WAYNE BRUCE,

Defendant,

and

MICHAEL SKINNER,

Appellant.

UNPUBLISHED
July 25, 2019

No. 343922
Oscoda Circuit Court
LC No. 14-001354-FC

Before: M. J. KELLY, P.J., and MARKEY and GLEICHER, JJ.

PER CURIAM.

Attorneys appointed to represent indigent criminal defendants are entitled to be paid a reasonable fee for their work and to be reimbursed for their expenses. The counties each have schedules for determining the fees and expenses to be paid, but some cases are more difficult or time-consuming than average. This is one such case, as the trial court explicitly recognized. Nevertheless, the trial court reduced both the fees and expenses requested by appointed appellate attorney, Michael Skinner. In doing so, the court made several legal and factual errors and failed to consider various factors outlined by the Michigan Supreme Court. We vacate the trial court's order and remand for further consideration.

I

Carl Bruce (Bruce) and his wife and codefendant, Rachel Bruce (Rachel), were convicted following a lengthy jury trial of first-degree felony murder and first and second-degree vulnerable adult abuse based on the death of Rachel's aging father, who had been in their care.

The main issue at trial was whether the decedent passed from the effect of his multiple ailments or whether the Bruces' neglect led to his death from malnutrition. *People v Bruce*, unpublished opinion of the Court of Appeals, issued August 17, 2017 (Docket Nos. 328925, 329484), slip op at 1. The prosecution established its case with the assistance of a certified "Medical Examiner Investigator," Rosey Ross. Ross is not a physician.

Following Bruce's conviction and sentence, the Oscoda Circuit Court appointed Michael Skinner to serve as his appellate attorney. Skinner filed a motion in this Court to remand to the trial court for a *Ginther*[1] hearing to determine whether his appointed trial attorney was ineffective, in large part, for failing to secure an expert witness to counter Ross's testimony and report. Skinner also contended that trial counsel should have sought to sever the codefendants' trials or to redact the evidence as Rachel's statements to the police were admitted into evidence against both defendants and Bruce was unable to confront this witness against him. This Court granted the motion. *People v Bruce*, unpublished order of the Court of Appeals, entered March 25, 2016 (Docket No. 328925). At that point, Rachel's posttrial proceedings were farther along and her appellate counsel, Valerie Newman, had already secured a *Ginther* hearing for April 6, 2016. As this Court had since consolidated the Bruces' appeals, Skinner and Newman both filed motions to adjourn Rachel's hearing so that a consolidated hearing could be conducted. On April 13, the trial court entered an order adjourning the hearing until May 23.

Skinner also filed a motion seeking posttrial relief. Skinner's motion raised a number of issues. He sought to make a record of the pretrial plea offers made to Bruce by the prosecution. Skinner wanted to flesh out the reasons trial counsel delayed any effort to secure a necessary expert witness. And he sought to explore the trial court's failure to sever the codefendants' trial and admission of Rachel's unredacted police statements.

On May 19, 2016, Skinner filed a motion to adjourn the May 23 hearing. Skinner contended that the trial prosecutor was a necessary witness regarding the pretrial plea offers and yet the prosecutor's office had not removed her as counsel of record. Skinner further asserted that consultation with an expert forensic medical examiner, Dr. Ljubisa Dragovic, was necessary to effectively prepare for the hearing, but that Dr. Dragovic "has been on vacation and will continue to be on vacation" until after the hearing date. The trial court adjourned the hearing to June 20, "[t]o allow time for Prosecutor to find substitute counsel." Skinner contemporaneously filed an adjournment motion in this Court, which was granted. *People v Bruce*, unpublished order of the Court of Appeals, entered May 23, 2016 (Docket No. 328925).

Skinner represented Bruce at the evidentiary hearing. He and Newman called Dr. Dragovic to the stand. Skinner questioned Bruce's trial attorneys at length. Mr. and Mrs. Bruce both took the stand, as did Bruce's sister. The prosecution presented the testimony only of the trial prosecutor. Skinner asked detailed and relevant questions throughout. Following the hearing, Skinner presented lengthy supplemental briefing on his client's behalf, arguing that the prosecution presented insufficient evidence to support that Bruce was at fault in his father-in-law's death and that trial counsel was ineffective in failing to secure an expert witness before

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

trial and in failing to seek either severance of the codefendants' trial or to redact Rachel's police statements.

The trial court denied the motion for a new trial. Skinner filed an appellate brief in this Court, challenging the sufficiency of the evidence and raising four separate grounds to find trial counsel's performance defective. This Court reversed both codefendants' convictions and remanded for a new trial. Of import, this Court held that Bruce was prejudiced by the absence of a defense expert witness at trial and by the admission of Rachel's unredacted statement to the police at their joint trial before a single jury. See *Bruce*, slip op at 8, 10-12.

Skinner continued to represent Bruce when the matter was remanded to the trial court. Skinner secured a favorable plea for his client; Bruce pleaded guilty to involuntary manslaughter and second-degree vulnerable adult abuse and was sentenced to 10 to 15 years' imprisonment, rather than life.

II

On November 6, 2017, Skinner completed a "Michigan Appellate Assigned Counsel System [MAACS] Statement of Service and Order for Payment of Court Appointed Counsel" "voucher." Skinner detailed 15 pleadings he filed on Bruce's behalf in this Court and the trial court, including motions to extend filing deadlines, to adjourn hearings, and related to the remand, and the posttrial and appellate briefs. Under the category of "administrative, legal, investigative," Skinner listed 26 letters he had drafted to his client, the courts, the prosecutor, and Bruce's trial attorney, as well as 28 letters he reviewed from his client and the courts. Skinner indicated that he spent 0.1 hours on each letter, totaling 5.4 hours of work. He entered 14 line items for reviewing the evidence, such as the 911 call, medical reports and records, and Rachel's recorded statements, totaling 5.8 hours. He took up 13.4 hours reviewing the lower court file and trial transcripts and drafting a statement of facts and spent 3.6 hours conducting legal research. Skinner expended 30.5 hours preparing and drafting various motions, affidavits, and subpoenas, as well as the supplemental posttrial brief and appellate brief filed in this Court. He also spent 3.7 hours preparing for and attending oral argument in this Court, 10.2 hours preparing for and attending the evidentiary hearing on remand, .5 hours negotiating Bruce's plea deal, 1.4 hours meeting with his client, and 1.5 hours at sentencing and in in-chambers conferences. For a total of 76 hours work, Skinner requested $5,700 in attorney fees. He further sought $697.00 to cover 27.9 hours of travel from his Lake Orion office to the Court of Appeals argument in Lansing, a client visit in Detroit, and several trips to Oscoda County. He requested mileage, lodging, photocopying, and subpoena expenses of $907.98. The grand total sought by Skinner for his time and services was $7,305.48.

On January 25, 2018, Skinner filed a motion in the circuit court in support of his attorney-fee request. Skinner billed at Oscoda County's "standard $75 an hour rate." After summarizing the extensive work required in this matter, Skinner argued that he was "entitled to reasonable compensation for" his services. The reasonableness of his fees was dependent "on 'the totality of the special circumstances applicable to the case at hand.' " *Smith v Khouri*, 481 Mich 519, 529; 751 NW2d 472 (2008). To determine the reasonableness of his requested fees, Skinner encouraged the court "to consider the factors laid out in" *Wood v DAIIE*, 413 Mich 573, 588; 321 NW2d 653 (1982), and MRPC 1.5(a).

Relative to the factors outlined in *Wood* and the MRPC, Skinner noted that he was one of "a small number of lawyers who devote their practice exclusively to criminal appellate work" and had handled more than 200 criminal appeals in his 16 years of practice. Moreover, "[t]he case involved several significant appellate issues" and required an evidentiary hearing, "which occurs in only a small percentage of criminal cases." Bruce faced life imprisonment for his murder charge, "the most severe penalty available under Michigan Law," and Skinner "secured a new trial on two theories from the Court of Appeals," despite that "90%+ result in affirmance, and even some of the 'reversals' are on minor collateral issues to the main sentence." Skinner emphasized the difficulty of this case, which "involved medical evidence, the consultation of an expert, four separate trips to the trial court for hearings, 15 pleadings," an evidentiary hearing, and "litigation in the Court of Appeals." Moreover, the transcripts and amount of discovery to review were unusually voluminous. Ultimately, Skinner contended that denying his higher-than-normal fee request would have a "chilling effect" on the willingness of appointed attorneys to expend the amount of energy necessary to provide effective assistance in such complicated matters.

The trial court heard Skinner's motion for attorney fees on April 30, 2018. The court chastised Skinner for racking up fees to serve subpoenas on Bruce's trial attorneys when he could have used the court's services. Skinner does not challenge that ruling on appeal.

The court continued:

> I do agree with you, Mr. Skinner, that certainly this case warrants some extraordinary attorney fees due to the complexity of the case. But when I looked over your statement of services, the first subtotal that you had of . . . 20.2 hours, you allotted 12 hours for review of the transcript and drafting a statement of facts. I think that was excessive. I allotted eight hours for that review.

Skinner insisted that he actually spent the time indicated in reviewing the more than 1,200 pages of transcript, summarizing the proceedings, and "turning it into a statement" of facts that spanned "15 or 20 pages for [sic] a brief."

The trial court took issue with the time recorded by Skinner for correspondence: "You also had 54 letters. I allotted three hours. I had over eight [sic: 5.4] hours for correspondence. I allotted had [sic] three hours for that. I thought that was excessive." Skinner retorted:

> I would just make a general objection to reducing the correspondence. I understand that it's annoying to pay that. But . . . I can't bill less than a tenth of an hour per letter. And again, [MAACS] and the Attorney Grievance Commission have made very clear to me that I need to answer all of my clients' letters, and keep them informed. . . . I specifically got in trouble from [MAACS] by telling them I had three letters that I did not answer from a client. And I was going to address it during the in client [sic] visit, and they said no, that's not acceptable. You answer every letter. So I think that that is - - quite frankly .1 hours is the smallest I can bill. And . . . many of the letters I just billed .1. I definitely spent more time than .1 on some of those letters. So I don't think that's reasonable to reduce that.

The court reduced the amount to be reimbursed connected to the motions to remand and to adjourn the hearings:

> You had a motion to amend remand motion; a motion to accept the amendment. I think those were kind of redundant and unwarranted. You have a motion to adjourn both in the Circuit Court and in the Court of Appeals. My recollection is that a couple of those adjournments were due to your unpreparedness. So I don't think those are warranted.

Skinner did not address these items at the hearing.

The court reduced the compensable hours for Skinner's preparation for the evidentiary hearing:

> You also had six hours to prepare for the evidentiary hearing. There are a number of hours previous to that preparing the pleadings. And so I think six hours is a bit excessive. I allotted three for the preparation of the evidentiary hearing, since you had previously done all that research.

Skinner replied, "Those are different things, the pleadings and the preparation. I have to map out what questions I'm going to ask. There . . . was an expert. There were multiple trial attorneys. I would object to reducing that amount."

The court challenged Skinner's recollection of certain court proceedings: "And then you have twice listed an hour for an in-chambers conference. I recall we did have one lengthy in-chambers conference. I don't believe we had two. We did have other in-chambers conference, but I don't think we had two that were that long." Skinner explained:

> The in-chambers conferences, they were on two separate dates. One - - the one is related to - - I'm sorry I'm trying to find the line items. Well, I guess I sort of said that - - on the third to last line of my time sheet. That was related to the plea. And then the other one was related to the evidentiary hearing. On both of those, I don't know what to say. Both of them were lengthy.

> And also the plea hearing, in-chambers conference, that was the plea hearing too. It wasn't just an in-chambers conference. That's why I have - - you know, there were a few minutes in chambers. You're correct. It was not a full hour in chambers. We went in. We had a discussion. Then we had the plea hearing. And the plea hearing was for both defendants. It lasted awhile. And the other one was related to the evidentiary hearing.

The court reduced Skinner's request for reimbursement for copying expenses. The court disagreed that Skinner was required to provide a copy of the entire file to Bruce, asserting that only the transcripts were required. Skinner responded that he was required by MAACS and the Attorney Grievance Commission to provide the entire file to his client upon request and he did not think it "appropriate to make [him] bear the cost."

Overall, Skinner protested that the "standard" for compensation of court-appointed appellate attorney fees "is for the actual time spent." The court expressed, "I appreciate the extra effort that this kind of case takes" and appreciated the financial burden upon Skinner as a solo practitioner. However, the court noted, "the presumptive maximum for this case is 3375. You've asked for more than double that." The court indicated that it had "approved a lot of what you've asked for, certainly appreciating how much time it takes to prepare for these kinds of things, and it being a serious case. So I have a lot of what I feel is reasonable under the circumstances." Skinner replied, "[T]he current max standard that presumptive maximum is based on . . . 45 hours of time. And Your Honor's calculating this case at 46 hours, which means one hour longer for this case than the average case. . . . [T]his case was more than that." The court responded that regardless of the difficulty, "[t]his was a level two case" and the presumptive maximum for that level was $3,375.

At the hearing, the court indicated that Skinner would be reimbursed for 54.8 hours of work, for a total of $4,110, plus $533.80 for mileage, $697.50 for travel time, and $803.10 in expenses, for a grand total of $6,144.40.

After correcting a mathematical error, the court issued an order for reimbursement as follows:

☑ The court further orders

$4110.00 Legal Services - 54.8 hours x $75/hour

$ 697.50 Travel time - 27.9 hours x $25/hour

$803.10 Expenses - Lodging $68.90 + $79.50, Mileage $533.80, Copying $120.90

$5610.60 Total    per Peggy    5/2/18

101-130-814.02

Check number 103185 in the amount of $5,610.60 was issued to Skinner on May 22, 2018.

III

Skinner now challenges the trial court's reduction of the hours and costs expended on this matter. Until 2013, MCL 775.16 provided for compensation of appointed counsel in an amount "consider[ed] to be reasonable compensation for the services performed." Despite that this provision was removed from the statute by 2013 PA 94, trial courts must still determine reasonable compensation for a court-appointed attorney's services and expenses. *In re Attorney Fees of Foster*, 317 Mich App 372, 376 n 1; 894 NW2d 718 (2016), citing *In re Attorney Fees of Ujlaky*, 498 Mich 890; 869 NW2d 624 (2015). We review the trial court's decision for an abuse of discretion. *Foster*, 317 Mich App at 376. "An abuse of discretion occurs when the trial court reaches a decision falling outside the range of reasonable and principled outcomes." *Id*. We review for clear error the "findings of fact on which the trial court bases an award of attorney fees." *Richards v Richards*, 310 Mich App 683, 700; 874 NW2d 704 (2015). "A decision

qualifies as clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made. Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (cleaned up).[2]

In *In re Fees of Jamnik*, 176 Mich App 827, 831; 440 NW2d 112 (1989), this Court enumerated three factors to consider in determining the reasonableness of appointed attorney fees:

> 1. The complexity and difficulty of the case and the time and expense of counsel which can reasonably be justified.
>
> 2. The trial court's policy as to compensation.
>
> 3. The minimum standards for indigent criminal appellate defense services promulgated by the Michigan Supreme Court in Administrative Order 1981-7, 412 Mich lxxxiv-xci.

Michigan Supreme Court Administrative Order 1981-7 was "replace[d]" by Administrative Order 2004-6, 471 Mich c-cvi, effective January 1, 2005, and superseded by Administrative Order 2017-3, 501 Mich lvi-lviii, effective November 15, 2017. The 2004 standards for appellate counsel remain in place and governed at all relevant times in this matter.

Of relevance to this case, the 2004 standards require appointed appellate counsel to ensure that that the lower court file is complete and that all potentially "useful or necessary" proceedings are in the register of actions and transcribed. Michigan Supreme Court Administrative Order 2004-6, 471 Mich at ci. Before filing the appellate brief, counsel must "review[] the relevant transcripts and lower court records" and then "must consult with the defendant about the proposed issues to be raised on appeal and advise of any foreseeable benefits or risks in pursuing the appeal." *Id*. If counsel detects "a potentially meritorious issue [that] involves a matter not reflected in the trial court record, counsel should move for and conduct such evidentiary hearings as may be required." *Id*. at cii.

As noted, the factors of *Wood*, 413 Mich at 588, and MRPC 1.5(a) are also relevant in determining a reasonable attorney fee. While not every factor is relevant in criminal matters, the factors in *Wood* are: "(1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client." *Wood*, 413 Mich at 588 (cleaned up). MRPC 1.5(a) includes some overlap and provides:

---

[2] This opinion uses the parenthetical (cleaned up) to improve readability without altering the substance of the quotation. The parenthetical indicates that nonsubstantive clutter such as brackets, alterations, internal quotation marks, and unimportant citations have been omitted from the quotation. See Metzler, *Cleaning Up Quotations*, 18 J App Pract & Process 143 (2017).

The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

More recently, the Supreme Court explained in *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 281; 884 NW2d 257 (2016), a case involving the attorney-fee provision of MCL 500.3148:

[W]hen determining the reasonableness of attorney fees . . ., a trial court must begin its analysis by determining the reasonable hourly rate customarily charged in the locality for similar services. The trial court must then multiply that rate by the reasonable number of hours expended in the case to arrive at a baseline figure. Thereafter, the trial court must consider all of the remaining *Wood* and MRPC 1.5(a) factors to determine whether an up or down adjustment is appropriate.

The *Pirgu* Court "distill[ed] the remaining *Wood* and MRPC 1.5(a) factors into one list to assist" trial courts in considering attorney-fee awards:

(1) the experience, reputation, and ability of the lawyer or lawyers performing the services,

(2) the difficulty of the case, i.e., the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly,

(3) the amount in question and the results obtained,

(4) the expenses incurred,

(5) the nature and length of the professional relationship with the client,

-8-

(6) the likelihood, if apparent to the client, that acceptance of the particular employment will preclude other employment by the lawyer,

(7) the time limitations imposed by the client or by the circumstances, and

(8) whether the fee is fixed or contingent. [*Pirgu*, 499 Mich at 281-282.]

The *Pirgu* Court concluded, "These factors are not exclusive, and the trial court may consider any additional relevant factors. In order to facilitate appellate review, the trial court should briefly discuss its view of each of the factors above on the record and justify the relevance and use of any additional factors." *Id*. at 282.

Appellate courts have repeatedly approved the adjustments discussed in *Pirgu*. See *In re Attorney Fees of Jacobs*, 185 Mich App 642, 646-647; 463 NW2d 171 (1990); *In re Attorney Fees of Mullkoff*, 176 Mich App 82, 85-86; 438 NW2d 878 (1989). See also *Ujlaky*, 498 Mich at 890, in which the Supreme Court remanded to the circuit court "for a determination of the reasonableness of the attorney fees requested," reasoning:

> The trial court applied the county's fee schedule, which capped compensation for plea cases at $660, but did not address at all the reasonableness of the fee in relation to the actual services rendered, as itemized by the appellant. See *In re Recorder's Court Bar Ass'n*, 443 Mich 110, 131; 503 NW2d 885 (1993). Although the expenditure of any amount of time beyond that contemplated by the schedule for the typical case does not, ipso facto, warrant extra fees, spending a significant but reasonable number of hours beyond the norm may. On remand, the trial court shall either award the requested fees, or articulate on the record its basis for concluding that such fees are not reasonable. See, e.g., [*Mullkoff*, 176 Mich App at 85-88, and *Jamnik*, 176 Mich App at 831].

IV

In this case, the trial court made several factual and legal errors in determining the total attorney fees and costs to which Skinner was entitled. First, the court miscalculated the time Skinner spent drafting and reviewing correspondence as eight, rather than 5.4, hours. The court reduced the reimbursable hours for this task to three. We cannot be certain on this record if the court would have felt the need to reduce the hours attached to this task had it considered the true number of hours spent.

In declining to reimburse the attorney for preparing motions to adjourn, the trial court erroneously noted that the evidentiary hearing had to be adjourned due to Skinner's "unpreparedness." The record does not support this statement. The first adjournment was required because Bruce's and Rachel's appeals did not proceed at the same pace and were suddenly consolidated on the eve of Rachel's scheduled evidentiary hearing in the trial court. Both attorneys sought an adjournment as it would be more efficient to conduct a single hearing. The second adjournment was required because the defense expert witness was not available and because the prosecutor's office had not assigned a new attorney to handle the matter despite that the trial prosecutor was a required witness at the hearing. The grounds for denying this reimbursement were therefore invalid.

The court never addressed Skinner's challenge to the court's potential error regarding the time spent in in-chambers conferences and at the plea hearing. Skinner recorded that he spent one hour on May 23, 2016 at an in-chambers conference resulting in the adjournment of the evidentiary hearing. The hearing on June 20 consumed 3.2 hours. Then, on October 19, 2016, Skinner recorded a combined total of one hour for an in-chambers conference followed by a joint plea hearing from Bruce and Rachel. The time recorded seems rather minimal for these tasks and the trial court should review its records and notes in reconsidering this issue.

The court further did not respond to Skinner's assertion that he was required to copy and provide the entire lower court file to his client, not just the trial transcripts. Supreme Court Administrative Order 2004-6 supports Skinner's position. Standard 1 of the "minimum standards for indigent criminal appellate defense services" provides that counsel must promptly examine the lower court record to ensure its completeness. Counsel must also "consult[] with the defendant . . . [to] determine whether any relevant proceedings have been omitted. Administrative Order 2004-6, 412 Mich at ci. The record necessarily includes more than the transcripts of the proceedings as aptly reflected in the commentary to Supreme Court Administrative Order 1981-7, 412 Mich at lxxxvi-lxxxvii:

> [T]he record includes more than the bare transcript of the trial or guilty plea. Such items as docket entries, charging documents, search warrants, competency and sanity evaluations, judicial orders and presentence reports may reveal or support claims of error. Familiarity with the total record is therefore crucial to effective appellate representation.

See also MAACS Comment to Supreme Court Administrative Order 2004-6, Standard 1, available at <http://www.sado.org/content/pub/11142_Minimum-Standards.pdf> ("To meaningfully consult with the client and properly prepare an appeal, appellate counsel must obtain and review all available case documents—including all transcripts, the full court file, and sentencing and discovery materials."). Administrative Order 2004-6, Standard 2, 471 Mich at cii, requires appellate attorneys to "consult with the defendant about the proposed issues to be raised on appeal." Moreover, Standard 4, 471 Mich at cii, provides that "When a defendant insists that a particular claim or claims be raised on appeal against the advice of counsel, counsel shall inform the defendant of the right to present the claim or claims in propria persona" and provide certain "procedural advice and clerical assistance." In order to proceed in propria persona and make educated decisions, the indigent defendant would need the same level of familiarity with the record as his attorney, which requires access to the same record as counsel. The trial court clearly erred in determining that Skinner was not required to copy and provide the entire lower court record to Bruce and therefore erred in cutting Skinner's requested reimbursement in this regard.

As for the reasonableness of the hours Skinner expended in reviewing, researching, and preparing in this case, the trial court never specifically mentioned any of the factors enumerated in *Jamnik*, the administrative orders, *Wood*, MRPC 1.5(a), or *Pirgu*. The court took notice of the complexity and difficulty of this particular case as required by all sources. The court recognized that Skinner was a solo practitioner and that the time spent on this matter interfered with his ability to work on other cases as provided in MRPC 1.5(a)(2), (5) and the sixth *Pirgu* factor. The court acknowledged the county's appointed counsel compensation policy as provided in the

-10-

second *Jamnik* factor. Oscoda County's maximum payout would generally by $3,375, and the court determined that higher payment was warranted in this matter. But the court took no notice of Skinner's "experience, reputation and ability," or "the results obtained." *Pirgu*, 499 Mich at 282; *Wood*, 413 Mich at 588; MRPC 1.5(a)(7). The court also took no notice of the minimum standards Skinner was required to meet at that time by Administrative Order 2004-6 or how effective representation in this complex matter may have required additional effort. *Pirgu* dictates that trial courts consider and at least briefly address each factor on the record. This record consideration is necessary for appellate review. We must remand to allow the trial court to more fully consider and explain its decision.

We vacate and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Michael J. Kelly
/s/ Jane E. Markey
/s/ Elizabeth L. Gleicher