*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN CARROLL,

      Plaintiff-Appellee,

v

MARSHALL RAY OLGER,

      Defendant-Appellant.

UNPUBLISHED
February 04, 2026
9:57 AM

No. 374088
Iosco Circuit Court
LC No. 2023-003550-DO

Before: ACKERMAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

In this divorce action, defendant, acting *in propria persona*, appeals as of right the trial court order holding him in contempt of court and requiring him to pay plaintiff $5,000 in attorney fees for the repeated delay in satisfying the terms of the divorce judgment. On appeal, defendant contends that the trial court's decision to award $5,000 in attorney fees should be reversed because the trial court failed to conduct an evidentiary hearing and because the fees were unreasonable. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In this case, defendant filed a claim of appeal from a December 27, 2024 order of the trial court that provided:

> Upon a hearing being held and the court having read parties' pleadings, reviewed parties' exhibits, and having heard testimony and oral arguments, it is hereby ordered:
>
> 1. All prior written orders of the Honorable Court remain in full force and effect, including but not limited to:
>
> > a. Consent Judgment of Divorce dated 11/02/2023.
>
> > b. Order After Hearing of July 25, 2024, entered on 08/12/2024.

c. Order Correcting Judgment of Divorce dated 09/12/2024.

2. The Court's order at hearing of September 12, 2024, is entered as follows:

a. Defendant's Motion for Reconsideration dated 08/27/2024, and as amended 09/05/2024, is denied.

b. Defendant's Motion to Enforce Judgment of Divorce/Motion for Relief from Order dated 08/27/2024, and as amended 09/05/2024, is denied.

c. Defendant's oral Motion to Stay Pending Appeal is denied

3. Defendant, Marshall Olger, having failed to pay Plaintiff in full by August 31, 2024, as ordered by the court pursuant to the Order After Hearing of July 25, 2024m [sic] is held in Contempt of Court.

4. The property at 3612 Kings Corner Road, Michigan 48750 shall be immediately listed for sale through realtor, Imse Ockey, of Sunrise Reality [sic] in Oscoda, Michigan, and sold.

5. The proceeds from the sale of the property shall be first used to pay Plaintiff the amount **due of $ 83,140.71**, plus additional accrued interest at 9% per annum through the sale date, to be calculated by Plaintiff's counsel and submitted at closing, from 06/01/2024 pursuant to paragraph 11 of the Judgment of Divorce.

6. Defendant is ordered to pay Plaintiff's attorney fees in the amount of $5,000 as of December 26, 2024, for the repeated delay in satisfying the terms Judgment of Divorce.

7. Defendant is order [sic] to pay Plaintiff $2,000 for damages contemplated in paragraph 10 of the Judgment of Divorce.

8. Parties have abandoned their claims regarding personal property. The personal property will be divided per the settlement agreement.

9. This resolves all remaining claims and closes the case until further order of the court.

On January 15, 2025, defendant, as a self-represented indigent party, moved in this Court for a stay, to waive transcripts and/or orders, to waive fees, and for immediate consideration. Following a jurisdictional review, this Court determined that it only had jurisdiction over the $5,000 award in attorney fees:

The claim of appeal is DISMISSED IN PART for lack of jurisdiction as follows. This appeal is DISMISSED entirely as to the August 12, 2024 postjudgment order because it is not a final order appealable of right. MCR 7.202(6)(a); MCR 7.203(A). Further, the claim of appeal is DISMISSED as to all of the December 27, 2024 postjudgment order, except for the provision

ordering appellant to pay appellee's attorney fees in the amount of $5,000, because only that provision of the order is appealable of right. MCR 7.202(6)(A)(iv); MCR 7.203(A). This partial dismissal is without prejudice to the filing of an application or delayed application for leave to appeal under MCR 7.205 as to the August 12, 2024 order or the bulk of the December 27, 2024 order, provided such a filing meets all requirements under the court rules and is not time-barred.

The motions for stay, immediate consideration, and to waive the transcript requirement of MCR 7.209(A)(3), are also DISMISSED because the motion for stay is focused on matters not within the proper scope of this appeal of right. MCR 7.216(A)(7). This is without prejudice to appellant filing a motion for stay in this appeal that's directed only at the requirement that he pay appellee's attorney fees in the amount of $5,000. The motion to waive fees is GRANTED for this case only. [*Carroll v Olger*, unpublished order of the Court of Appeals, entered January 17, 2025 (Docket No. 374088)].

On January 28, 2025, defendant filed a delayed application for leave to appeal in this Court, seeking to appeal the consent divorce judgment dated November 2, 2023, and the August 12, 2024 order ruling on plaintiff's motion to show cause for defendant's failure to comply with the property settlement provisions of the divorce judgment and motion to order the sale of real property. This order provided that plaintiff was entitled to a lien on the Kings Corner Road property until defendant paid the amounts due under the divorce judgment. If the amount outstanding was not paid by August 31, 2024, the property was to be listed for sale and sold with the proceeds first used to pay plaintiff. Also by August 31, 2024, the parties were to attempt to resolve any personal property issues. After that date, any unresolved personal property issues were to be submitted to binding arbitration with Lori Henderson. Defendant also submitted the December 27, 2024 order as a basis for the appeal, noting that multiple rulings were rendered in that order, and the Court of Appeals clarified in its January 17, 2025 order (in Docket No. 374088) the items deemed ripe for application for leave to appeal. On March 20, 2025, this Court denied defendant's delayed application for leave to appeal for lack of merit. *Carroll v Olger*, unpublished order of the Court of Appeals, entered March 20, 2025 (Docket No. 374218). Additionally, this Court denied defendant's motion for reconsideration. *Carroll v Olger*, unpublished order of the Court of Appeals, entered May 2, 2025 (Docket No. 374218). On June 12, 2025, defendant filed an application for leave to appeal with our Supreme Court. That application for leave to appeal remains pending.

Because of the above procedural posture of this case, only the attorney-fee question is to be resolved in this appeal. Nonetheless, additional background is necessary to determine whether the $5,000 attorney fee should be reversed on appeal.

On November 2, 2023, the parties entered into a consent divorce judgment. Defendant was to receive possession and exclusive use of the parties' real property on Kings Corner Road in exchange for payment of $112,295.85 with an initial payment of $85,000 by November 29, 2023, the second installment of $16,147.93 by January 27, 2024, and the third installment of $16,147.92 by March 27, 2024. And defendant was to remove plaintiff's name from the mortgage by March 27, 2024, and, if he failed to do so by May 27, 2024, the property was to be listed and sold. Furthermore, if defendant failed to refinance and/or remove plaintiff's name from the mortgage by

March 27, 2024, the judgment provided that defendant "shall pay" plaintiff an additional $2,000 lump sum.

The consent judgment also stated that each party was responsible for the payment of the balance of their attorney fees except as otherwise provided. Pertinent here, the judgement contained the following provisions addressing attorney fees when required to enforce the consent judgment and the parties' responsibilities:

> **IT IS FURTHER ORDERED AND ADJUDGED** that should it be necessary for a party to utilize court action to compel the other party to comply with a provision of this Judgment of divorce, then the prevailing party shall be entitled to the actual attorney fees and costs for having to bring the court action.

> **IT IS FURTHER ORDERED AND ADJUDGED** that each party shall do all that is necessary to conform to all of the terms and conditions contained within this Judgment.

On July 25, 2024, there was a hearing on plaintiff's motion to show cause. At the hearing, plaintiff asserted that defendant failed to comply with the payment schedule in the consent judgment. Although plaintiff had received a partial payment, defendant had made no additional effort to remove plaintiff from the mortgage and the note. Additionally, plaintiff had consulted with the bank representative Beth Tessmer who indicated there was nothing "in the hopper" toward defendant's refinancing. In contrast, defendant stated that he was in constant contact with Tessmer who advised that there was no need to refinance and that plaintiff needed to provide a quitclaim deed. Defendant claimed that he made all the payments to his attorney,[1] the first was a $90,000 wire transfer and the second a cashier's check. Defendant stated, "My attorney tells me that everything has been taken care of." The trial court questioned whether defendant had physical proof. Defendant represented that he could go to the bank and get it. Because it was a show cause, the trial court noted that now was the time to present it.

Plaintiff's counsel, as an officer of the court, stated that she repeatedly sought from defendant proof of funds with "folders of emails back and forth" and never received any. In response, defendant claimed that the wire transfer was from defendant to his attorney. Defendant acknowledged that he did not have proof of that transaction but asserted that he had asked for it. He alleged that the property was appraised at $345,000, he planned to continue living there, and he was actively harvesting the cedar on the property. When the court inquired if the cedar harvesting lessened plaintiff's lien on the property, defendant alleged that plaintiff received $20,000 in arbitration for it. Defendant claimed that he was "amiss" because he did not have an

---

[1] Defendant's attorney, Michelle Elowski, was enjoined from the practice of law on April 3, 2024, *In re Elowski*, ___ Mich ___; 4 NW3d 70 (2024). In February 2025, Elowski pleaded no contest to embezzlement by an agent of $1,000 or more but less than $20,000, MCL 750.174(4)(a), in Oscoda County Circuit Court Docket No. 2024-001954-FH. See MRE 201(c). As part of Elowski's sentence, she agreed to pay restitution for the benefit of named woman, not defendant in this case. *Id*. And, although defendant claimed he gave money to Elowski, he offered no documentary evidence to support this assertion.

attorney as she was no longer practicing law. He asserted that he "met every requirement" on his end and had done everything he was supposed to do to remove the mortgage and note. The trial court observed that there was no proof of monies paid except for one partial payment by personal check. The court held that plaintiff had a lien on the property and interest would accrue at 9%. If payment was not made by August 31, 2024, the property was to be listed for sale. The parties also had until that day to comply with the distribution of the list of personal property and any further disagreement would be submitted to arbitration. Defendant objected to the continued use of Henderson as the arbitrator, contending that she treated him unfairly. In response, plaintiff alleged that Henderson rescheduled the parties' initial mediation because defendant failed to file a mediation summary. The trial court declined to appoint a new arbitrator, noting that when both parties had counsel, they agreed upon Henderson. The trial court scheduled a hearing for September 12, 2024, to determine if its orders were followed.

On September 12, 2024, a hearing addressed defendant's motion for reconsideration and to correct the judgment. Defendant alleged that there was never an agreement to the arbitrator. The trial court immediately denied the motion for reconsideration, citing the lack of palpable error because the parties and their attorneys resolved the arbitrator selection in the judgment.[2] The court further declined to reconsider the lien provisions and the order to sell the property if the refinancing did not occur.

With regard to correction of the judgment, plaintiff's counsel agreed that there was a clerical error because the amount identified as approximately $16,000 should have been $13,000. Nonetheless, defendant's payment was appropriately made and the balance identified was correct. Despite defendant's failure to pay in accordance with the consent judgment's terms, he was residing in the home. Plaintiff had no money and was relying on family to support her. Plaintiff argued that defendant's motion should be denied and that plaintiff was entitled to attorney fees for his activity. Defendant's actions essentially required that the parties "redo" the case by the failure to comply, and plaintiff itemized the attorney and paralegal fees charged. Plaintiff's counsel requested that the marital property be put up for sale as the remaining personal property issues were negligible at that point.

The trial court inquired whether defendant was injured if the judgment was corrected and the proper amount of setoff occurred. Defendant claimed that he was also entitled to $9,200 in receipts or that amount should be subtracted from his obligations. He asserted that money was available to plaintiff and that he should be reimbursed for the $9,200. The trial court inquired if defendant was aware of the allegations against his former counsel, to which he replied, "No." The trial court noted that there was no reason to believe defendant paid the money to Elowski or that it was in her client account. Defendant failed to indicate that he called the police about his payments to Elowski.

In response, plaintiff's counsel alleged that defendant had been provided the documentation to support the $9,200 in expenditures by plaintiff such that he was not entitled to a setoff or refund. It was argued that the information was presented at both mediation hearings.

---

[2] In pertinent part, the consent judgment of divorce referenced "binding arbitration by Lori Henderson or any other arbitrator mutually agreed upon by the parties and/or by the Court."

Defendant claimed that he only received invoices without proof of payment. Plaintiff's counsel continued to assert that this issue was resolved and decided at mediation, but defendant was trying to stall for failure to make his initial $85,000 payment.

The trial court continued to note that it made a finding and did not grant the motion for reconsideration. The trial court did grant the motion to correct the two amounts in the judgment. But the trial court declined to "re-try your judgment" and noted that defendant presented no evidence that he had complied with its terms pertaining to the real property. The trial court did not grant the attorney-fee request at that time, citing the "back and forth" by the parties, the mistakes made in the judgment, and the inability to determine whether the $9,200 issue was solely defendant's fault.

Defendant asked for a stay to appeal the decision. The trial court denied his oral request.

Defendant claimed that all plaintiff needed to do to remove her name from the mortgage was sign a quitclaim deed. But, in the e-mail correspondence submitted between defendant and bank representative Tessmer, Tessmer wrote: "Processes have changes since we last spoke and [I] found out that the way things were previously handled [when] removing borrowers was not within regulations." And, on October 16, 2024, Tessmer wrote defendant that a 30-year fixed mortgage was currently "as low as 6.75%." Additionally, defendant attached Elowski's notes[3] from the second arbitration. In item 13, Elowski wrote, "Henderson binding on judgment language + intent." This documentation seems to refute defendant's claims. Specifically, he asserted that plaintiff only needed to submit a quitclaim deed to be removed from the mortgage and note. However, the Tessmer correspondence indicated that the prior practice of borrower removal was no longer viable and that Tessmer gave defendant a quote regarding a 30-year fixed mortgage rate. Additionally, defendant repeatedly claimed that he did not agree to Henderson as an arbitrator. But Elowski's notes seem to reflect that it was a term of the parties' settlement agreement.

On December 5, 2024, defendant filed a motion for relief from order. Defendant claimed that plaintiff perpetrated a fraud upon the court by knowingly dissolving their business, Cedrus Timbers in May 2023, and negotiating the debt to defendant without disclosing her actions. The closure of this business would have "dire consequences" to defendant, including the taxes. Moreover, defendant was working with professionals to learn of the implications that had not yet been determined. Defendant entered into the consent judgment premised on the viability of the business for an equitable property division. Yet, plaintiff demanded defendant be held in contempt, his home be sold, and interest and penalties be paid to her while she knowingly had unclean hands. Plaintiff also failed to comply with the preparation of the deed to the home and personal property issues even as defendant worked tirelessly to resolve this case. In light of plaintiff's action, the divorce judgment must be set aside.

On December 26, 2024, the trial court held an evidentiary hearing to resolve the numerous issues pertaining to the divorce judgment. Defendant was sworn and questioned by the court. Defendant had alleged that there were no orders entered that denied his motion for reconsideration and motion for relief from order. The trial court advised him of the service of an order denying

---

[3] At the evidentiary hearing, plaintiff's counsel asserted these were arbitrator Henderson's notes.

those requests. Defendant also alleged that plaintiff committed a fraud by submitting a certificate of dissolution regarding the LLC. The trial court asked defendant why not just restart the corporate entity in his own name. Defendant stated that he was unaware of the dissolution until October 2024. Further, defendant acknowledged that he believed that the company would be transferred to him, that he would hold plaintiff harmless, and that he would dissolve it; however, it was already dissolved. When asked about the harm incurred, defendant stated that he was unable to do his taxes, but advised that he had not even tried to prepare his taxes. Then, defendant changed his testimony and claimed that he had tried. The trial court noted that defendant was under oath and claiming that "both of those things exist exclusively." Defendant indicated that he might not understand what was asked. The trial judge responded, "I think you're lying to me is what I'm saying." Defendant denied lying, claiming that he could file as an individual but would pay a "huge amount" because the company was dissolved. Defendant also alleged that the company had to be reinstated by court order. Defendant contended that the farm and equipment had been placed in the company name. The other LLC, Cedar's Bogs, consisted of trees and logging.

The trial court inquired how defendant was defrauded when the settlement negotiation notes reflected that defendant's corporation was not going to include plaintiff and that he would have to take action to do something. Defendant claimed that plaintiff negotiated to give defendant a company that she had already dissolved. Defendant initially denied that any real property was contained in the dissolved corporate entity before changing his testimony and stating that the tree farm was held there. Defendant claimed that he purchased the tree farm with his retirement account and sought to have $50,000 "probably" reflect his losses. The trial court questioned how defendant could make a claim to the assets on his taxes when they were not in defendant's name. The court also questioned defendant's failure to present documentation to support his testimony about the corporate property as well as his damages. After defendant began to list his equipment, the trial court expressed that defendant was seemingly confusing his equipment with the contents of an LLC. Defendant claimed that he was going to have to claim earnings of $340,000 from his use of his retirement fund. The trial court continued to note that it was unclear whether any property was ever placed in the LLC.

Upon questioning by plaintiff's counsel, defendant continued to assert that there was property in the LLC, but then acknowledged that he did not know that he needed to transfer property or notify the state agency of it. Defendant further denied that the mortgage could not be assumed on the original terms and that he was "stalling" because the refinancing rate would be substantially higher.

Defendant read from Elowski's letter and the consent judgment reflecting that he had to meet his monetary obligations before plaintiff was required to sign off on a quitclaim deed. When asked if defendant obtained refinancing or paid the monetary obligations, he responded that his "application is filled out." And defendant acknowledged that he only made partial payment to satisfy the judgment terms.

The trial court declined defendant's request to call plaintiff's counsel as a witness and defendant never made an offer of proof or identified the subject matter of his request. Plaintiff then called Richard Leerman, a transactional attorney, as an expert in real estate, business formation, and estate and tax planning without objection by defendant. Leerman had listened to defendant's testimony and denied that the corporate dissolution precluded him from filing his

taxes. Moreover, defendant's withdrawal from his retirement fund could have been offset by the purchase of equipment. And defendant's argument that an LLC was required to obtain an offset was nonsensical. Leerman could not identify any damages to defendant. Further, defendant could identify how the LLC was taxed.

In closing argument, defendant continued to assert that plaintiff's failure to give him a quitclaim deed caused him to increase his financing rate from 2.75% to 6.75% and that he gave $116,000 to comply with the judgment to his attorney Elowski. Yet he did not provide proof of the transfer of funds to Elowski.[4]

Plaintiff argued that defendant failed to provide proof of financing or pay his obligations to trigger her obligation to provide a quitclaim deed. Further, plaintiff's testimony reflected a misunderstanding with his bank regarding the mortgage discharge and how an LLC functioned. Consequently, plaintiff was called into court "time after time after time" and for "motion after motion," incurring substantial attorney fees. Under the divorce judgment's terms, plaintiff was entitled to attorney fees and she submitted an itemization of fees totaling $15,316.05. Plaintiff asked that defendant's motions be denied, that he be held in contempt of court for failing to comply with the trial court's July 24, 2024 order, that the property be sold, and that she be awarded the outstanding amounts plus the difference between the appraisal value and the sale price.

The trial court noted that defendant's testimony regarding the LLC and the taxes was seemingly premised on information that he acquired from someone else. Defendant could not answer specific questions about the LLC and taxes. Defendant also failed to demonstrate any fraud with plaintiff's dissolution of the LLC. Leerman's testimony refuted defendant's damage claim. The trial judge noted that he previously practiced divorce law and refinancing was commonplace rather than assumption of a mortgage. Although defendant claimed to pay the requisite funds to his attorney, he failed to provide proof, failed to contact the police, and failed to show that Elowski held the funds. The trial court noted that there was a great deal of time spent trying to conclude the case and that resolution seemingly only lasted for 30 days. Thereafter, defendant failed to satisfy the terms of the judgment. The trial court ordered the property to be listed for sale with the proceeds being used to pay plaintiff first, including 9% interest. The trial court further ordered payment of attorney fees of $5,000 through the hearing date as well as the $2,000 set forth in the divorce judgment for noncompliance. From this ruling, defendant appeals.

## II. ANALYSIS

Defendant first alleges the trial court erred in failing to conduct an evidentiary hearing regarding the reasonableness of the attorney fees. We conclude this issue was waived.

---

[4] The parties agreed that defendant partially paid the first installment ordered in the November 2, 2023 consent judgment of divorce as amended by the September 12, 2024 order to correct the judgment of divorce ($24,000 of $85,000 on or before November 29, 2023), paid the second installment ($13,647.93 by January 27, 2024), and partially paid the third installment ($2,500 of $13,647.92 by March 27, 2024).

"In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). To preserve an issue for appellate review, the party claiming error must show that the issue was raised in the trial court. *Id*. If a litigant failed to raise an issue in the trial court, there is no requirement that the Court of Appeals examine the issue. *Id*. Further, the challenge to the error raised in the trial court must be the same error claimed on appeal. *Id*. Plaintiff did not assert that he was entitled to an evidentiary hearing regarding attorney fees in the trial court.

At the evidentiary hearing, defendant attempted to call plaintiff's counsel. However, defendant did not state that he sought to call counsel to address attorney fees. Rather, a review of the contents of defendant's motion for relief from order seemingly indicated that plaintiff committed fraud by dissolving the corporate entity and failed to apprise her counsel of this dissolution because it was negotiated as part of the settlement. Thus, it appeared that defendant sought to call plaintiff's counsel to address the issue raised in the motion for relief from order. Because defendant failed to make an offer of proof regarding the substance of the excluded testimony that was allegedly improperly excluded, this issue is not preserved for appellate review. *Detroit v Detroit Plaza Ltd Partnership*, 273 Mich App 260, 291; 730 NW2d 523 (2006); see also MRE 103(a)(2) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party and: . . . (2) if the ruling excludes evidence, a party informs the court of its substance by an offer of proof, unless the substance was apparent from the context."). Because the substance of the excluded testimony was not apparent, defendant failed to preserve this issue and it is waived.

Next, defendant contends that the trial court abused its discretion by awarding attorney fees. We disagree.

An award of attorney fees in a divorce action is reviewed for an abuse of discretion. *Colen v Colen*, 331 Mich App 295, 300; 952 NW2d 558 (2020). "An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes." *Id*. (quotation marks and citation omitted). Factual findings underlying an attorney-fee award are reviewed for clear error. *Id*. "A finding is clearly erroneous when this Court is left with the definite and firm conviction that the trial court has made a mistake." *Tolas Oil & Gas Exploration Co*, 347 Mich App at 319.

Attorney fees in a divorce action may be awarded as necessary to enable a party to prosecute or defend a suit but may also be authorized when the requesting party was required to incur the expenses caused by the unreasonable conduct of the other party during the litigation. *Richards v Richards*, 310 Mich App 683, 700; 874 NW2d 704 (2015). The party seeking the attorney fees bears the burden of showing facts that sufficiently justify the award. *Borowsky v Borowsky*, 273 Mich App 666, 687; 733 NW2d 71 (2007).

MCR 3.206(D) addresses attorney fees and expenses, stating:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

(2) A party who requests attorney fees and expenses must allege facts sufficient to show that

(a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

(b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

"MCR 3.206(C)(2)(b)[5] considers only a party's behavior, without reference to the ability to pay." *Richards*, 310 Mich App at 701.

As already discussed, the trial court determined that defendant engaged in obstructive behavior. The trial court noted that defendant's testimony regarding the LLC and the taxes was seemingly premised on information that he acquired from someone else. Defendant could not answer specific questions about the LLC and taxes. And defendant failed to demonstrate any fraud with plaintiff's dissolution of the LLC. Leerman's testimony refuted defendant's damage claim. The trial judge noted that he previously practiced divorce law and that refinancing was commonplace rather than assumption of a mortgage. Although defendant claimed that he had paid the requisite funds to his attorney, he failed to provide proof that he had done so, failed to contact the police to report Elowski's alleged retention of those funds, and failed to show that Elowski held them. Instead, defendant repeatedly made assertions, including payment of his obligations to his counsel, without being truthful. Accordingly, the court ordered payment of attorney fees of $5,000 as well as the $2,000 set forth in the divorce judgment for noncompliance.

We cannot conclude that the trial court's factual findings were clearly erroneous. Defendant was required to make three payments to plaintiff within a specified period in order to execute the divorce judgment terms. Defendant claimed that he made the first two payments to his attorney. When the veracity of that statement was called into question, defendant failed to present documentary evidence in support. Instead, defendant claimed that plaintiff was obligated to provide a quitclaim deed. After defendant was ordered to make the payments or sell the property, he sought relief from the judgment, claiming that he was damaged by plaintiff's dissolution of an LLC. Yet, defendant could not identify specific damages and once again failed to provide proof of his payment of his obligations under the divorce judgment. Finally, although

---

[5] MCR 3.206(C)(2)(b) was the predecessor to MCR 3.206(D)(2)(b). As explained in the staff comments, the rule

was suggested by the Michigan Judges Association to (1) reduce the number of hearings that occur because of a litigant's vindictive or wrongful behavior, (2) shift the costs associated with wrongful conduct to the party engaging in the improper behavior, (3) remove the ability of a vindictive litigant to apply financial pressure to the opposing, party, (4) create a financial incentive for attorneys to accept a wronged party as a client, and (5) foster respect for court orders.

plaintiff requested over $15,000 in attorney fees, the trial court awarded only $5,000. Accordingly, defendant failed to demonstrate that the trial court's decision constituted an abuse of discretion under the circumstances.

Defendant's brief on appeal does not challenge the factors to address the reasonableness of the attorney fees requested and the amount awarded. Instead, defendant claims that plaintiff did not incur attorney fees as a result of his unreasonable conduct. However, in its ruling, the trial court determined that defendant failed to substantiate his compliance with the terms of the divorce judgment.

An award of attorney fees premised on a defendant's repeated delinquencies and designed to prevent future litigation does not constitute an abuse of discretion. *Milligan v Milligan*, 197 Mich App 665, 671; 496 NW2d 394 (1992). Further, where a defendant fails to challenge the hourly rate or the time expended, there is no need for an evidentiary hearing because the issue is waived. See *Baxter v Geurink*, 493 Mich 924, 924; 824 NW2d 564 (2013).[6] For these reasons, defendant has failed to demonstrate entitlement to appellate relief.

Affirmed.

/s/ Stephen L. Borrello
/s/ Anica Letica

---

[6] Although this decision was rendered only in an order, Michigan Supreme Court orders constitute binding precedent when the rationale can be understood. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018).