*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

KAREN LYNN GRASMEYER, also known as
KAREN LYNN WOLTERS,

        Plaintiff-Appellee,

v

RONALD LEE GRASMEYER II,

        Defendant-Appellant.

UNPUBLISHED
March 13, 2026
11:22 AM

Nos. 375438; 376413
Ottawa Circuit Court
LC No. 2023-100075-DM

Before: LETICA, P.J., and BORRELLO and RICK, JJ.

PER CURIAM.

In these consolidated appeals,[1] defendant, Ronald Lee Grasmeyer II, appeals as of right the trial court's order granting physical custody of two of the parties' minor children, KG and LG, to plaintiff, Karen Lynn Grasmeyer, also known as Karen Lynn Wolters. Defendant also appeals the trial court's award of attorney fees to plaintiff. For the reasons set forth in this opinion, we affirm.

## I. FACTS AND PROCEDURAL HISTORY

This matter arises from a contentious and extended divorce proceeding. Plaintiff initially filed a complaint for divorce in Muskegon Circuit Court in March 2022; however, the action was dismissed in March 2023 due to non-resolution or settlement within the statutory one-year period. After dismissal, plaintiff relocated from the marital residence in Muskegon to a residence in Hudsonville. In March 2023, plaintiff instituted the present divorce action in the Ottawa Circuit Court.

During the marriage, the parties resided in Muskegon and had four minor children: RG, TG, KG, and LG. They also assumed care for defendant's adult child, JG, who was not a minor during these proceedings. It is undisputed that in December 2021, defendant experienced a severe

---

[1] See *Grasmeyer v Grasmeyer*, unpublished order of the Court of Appeals, entered August 13, 2025 (Docket Nos. 375438 and 376413).

case of COVID-19, requiring hospitalization for several weeks in early 2022. During this period, plaintiff discovered defendant's extramarital affairs, which precipitated her decision to seek dissolution of the marriage. At trial, defendant conceded to engaging in relationships with other women, including individuals who were family friends.

It is further undisputed that, by the time of the Ottawa County divorce filing, plaintiff's relationship with the two eldest minor children, RG and TG, had become significantly strained. Both RG and TG absconded from plaintiff's residence and frequently refused to participate in parenting time with her. The record reflects that the contentious divorce proceedings, coupled with the dissemination of information and expressions of opinion to the children by both parents, adversely affected all four minors. In addition to absconding, RG was charged in juvenile court for an incident in which he choked plaintiff during a dispute regarding electronic device usage. TG, approximately 15 years old during the proceedings, consistently exhibited disrespectful and oppositional behaviors toward plaintiff, including verbal and physical confrontations and recurrent absconding. KG, who was approximately 13 years old at the time of the bench trial, had been diagnosed with Smith-Magenis Syndrome and mild cognitive impairment, resulting in emotional dysregulation and, at one point, juvenile charges for destruction of school property. The youngest child, LG, made suicidal and homicidal statements and began absconding from plaintiff's residence during parenting time.

Following an extensive bench trial, the trial court entered a judgment of divorce awarding the parties joint legal custody of the four minor children. Physical custody of RG and TG was awarded to defendant, while physical custody of KG and LG was awarded to plaintiff. The trial court subsequently awarded attorney fees to plaintiff. These appeals ensued.

## II. BEST-INTEREST FINDINGS

Defendant contests the trial court's award of physical custody of KG and LG to plaintiff, asserting that the court's factual findings are against the great weight of the evidence.

As set forth in the Child Custody Act, MCL 722.21 *et seq.*, we must affirm a child custody order on appeal unless the trial court's factual findings were against the great weight of the evidence, the trial court committed a palpable abuse of discretion, or the trial court made a clear legal error on a major issue. See MCL 722.28; *Fletcher v Fletcher*, 447 Mich 871, 876-877; 526 NW2d 889 (1994). As our Supreme Court explained in *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024):

> MCL 722.28 incorporates three standards of review into the act: (1) "a reviewing court should not substitute its judgment on questions of fact unless the factual determination clearly preponderates in the opposite direction," *Pierron v Pierron*, 486 Mich 81, 85; 782 NW2d 480 (2010) (cleaned up); (2) "an abuse of discretion occurs if the result is so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias," *Maier v Maier*, 311 Mich App 218, 221, 874 NW2d 725 (2015) (cleaned up); and (3) clear legal error exists when "a court incorrectly chooses, interprets, or applies the law," *Fletcher*[, 447 Mich at 881].

On appeal, defendant acknowledges that he does not challenge the trial court's finding that KG and LG maintained an established custodial environment with both parents. Under controlling precedent, modification of such an environment is precluded absent a showing, by clear and convincing evidence, that alteration would advance the children's best interests. See *Kuebler v Kuebler*, 346 Mich App 633, 670; 13 NW3d 339 (2023); *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003). In conducting the best-interest analysis, the trial court must evaluate the twelve statutory factors enumerated in MCL 722.23, apply the requisite evidentiary burden, and make explicit findings and conclusions on each factor. See *Kuebler*, 346 Mich App at 671.

The trial court found that, at the outset of the divorce proceedings, both parties engaged in conduct that undermined the children's relationships with the other parent, including exposing the children to ongoing personal and legal disputes between the parties. The court determined, however, that plaintiff more effectively curtailed such deleterious conduct than did defendant. On appeal, defendant challenges the weight the trial court accorded these findings when assessing best-interest factors (b), (d), (f), (j), and (l), arguing that the evidentiary record fails to substantiate the conclusion that his actions or statements toward plaintiff had a detrimental effect on the minor children sufficient to warrant adverse findings on those factors.

MCL 722.23 provides in relevant part as follows:

As used in this act, "best interests of the child" means the sum total of the following factors to be considered, evaluated, and determined by the court:

* * *

(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

* * *

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

* * *

(f) The moral fitness of the parties involved.

* * *

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

* * *

-3-

(*l*) Any other factor considered by the court to be relevant to a particular child custody dispute.

Defendant conceded that he made two inappropriate statements regarding plaintiff in the presence of the minor children. Specifically, in March 2023, defendant stated in the presence of TG that plaintiff had engaged in infidelity and had infected defendant with a sexually transmitted disease (STD). Additionally, in February 2024, defendant informed a clinician, in the presence of LG, that plaintiff did not have custody of LG's older brothers due to plaintiff's alleged domestic abuse. Defendant contends, however, that the trial court erred by assigning undue weight to these two statements and by applying them to multiple best-interest factors.

We conclude defendant's argument is unavailing. The trial court did not limit its analysis to the two statements defendant now concedes making in the presence of the children. Rather, as set forth in its comprehensive 62-page opinion and order, the trial court identified numerous instances wherein defendant made statements or engaged in conduct intended to undermine or disparage plaintiff. The record establishes that, in addition to attributing plaintiff's lack of custody of LG's brother to alleged abuse, defendant also informed LG's clinician that LG had absconded from plaintiff's home on seven occasions. Moreover, plaintiff testified that the children repeated statements to her that mirrored statements previously made by defendant, including allegations of infidelity, transmission of an STD, and attempted homicide. Additional evidence demonstrated that defendant blamed plaintiff, in the presence of the children, for delays in the divorce proceedings and for the parties' failure to reach a settlement.

Plaintiff acknowledged that, at the time she initiated divorce proceedings, she informed the children that her decision was prompted by defendant's infidelity. Plaintiff expressed regret for making this disclosure to the children and testified that she has since refrained from similar conduct. The trial court further observed that defendant continued to disparage plaintiff in the presence of the children throughout the pendency of these proceedings. In 2024, defendant sent a text message to plaintiff and to one or more of the minor children, accusing plaintiff of failing to care for the children, exhibiting pettiness and negativity, and harming the children through her actions. Defendant also instigated a confrontation that required police intervention when plaintiff, accompanied by her brother, returned to the marital home to retrieve personal property. Testimony was presented that defendant referred to plaintiff as "a money hungry b***" and "a terrible mother" in the presence of the children and appeared to encourage the children to treat plaintiff with disrespect.

The record further reflects that, despite the degrading, profane, and violent statements and conduct exhibited by RG and TG toward plaintiff, defendant took minimal or no action to intervene or correct such behavior. Defendant permitted TG to follow plaintiff throughout the home during an appraisal, during which TG physically impeded plaintiff, yelled at her, and suggested that she should harm herself, without significant intervention by defendant. Defendant testified that he believed RG was acting in self-defense when he choked plaintiff after she entered RG's room to recover her belongings.

The evidence further demonstrated that defendant did not encourage RG or TG to participate in plaintiff's court-ordered parenting time. Defendant refused to assist plaintiff in

-4-

arranging transportation for RG and TG following a court order and made little or no effort to facilitate reunification counseling for RG, TG, and plaintiff. Defendant allowed the children to leave their initial meeting with a reunification counselor and failed to intervene when RG and TG refused to engage with a second counselor, choosing instead to engage in disruptive behavior. Despite the counselor's request for defendant's assistance in addressing the children's conduct, defendant declined to intervene or provide support.

The trial court found that defendant's persistent disparagement of plaintiff in the presence of the children was the primary cause of the deterioration of plaintiff's relationship with the two older children. Significantly, the trial court determined that no credible evidence supported defendant's claims that plaintiff engaged in extramarital affairs, transmitted an STD to defendant, or attempted to harm defendant by providing improper medical care during his illness with COVID-19. While defendant admits to only two such statements, the evidence overwhelmingly established a pattern of frequent disparagement by defendant, or encouragement of the children to disparage plaintiff and to regard her as an unfit parent and person. Accordingly, the trial court's factual findings regarding defendant's conduct were not against the great weight of the evidence. See *Sabatine*, 513 Mich at 284.

Moreover, contrary to defendant's contention that the trial court erred by considering this conduct under multiple best-interest factors, the law recognizes that certain best-interest factors may overlap, and a single fact or circumstance may properly be considered under more than one factor. *Fletcher v Fletcher*, 229 Mich App 19, 24-25; 581 NW2d 11 (1998). This Court defers to the trial court's credibility assessments and acknowledges that the trial court is vested with discretion to assign varying weight to the best-interest factors. See *Kessler v Kessler*, 295 Mich App 54, 64; 811 NW2d 39 (2011).

Defendant's remaining arguments as to the individual best-interest factors amount to a request that this Court reweigh the evidence and substitute its judgment for that of the trial court, which is inconsistent with the applicable standard of review. Accordingly, we decline to do so and affirm the trial court's determinations regarding the best-interest factors. See *Sabatine*, 513 Mich at 284. For the foregoing reasons, the trial court's factual findings and assessment of the best-interest factors were not against the great weight of the evidence, and the trial court's custody determination is affirmed. See MCL 722.28.

III. SETTLEMENT AGREEMENT

Defendant asserts that the trial court erred in setting aside the settlement agreement reached by the parties following mediation, contending that the court's finding of fraudulent nondisclosure on the part of defendant was improper.

Prior to trial, the parties executed a settlement agreement after mediation, which purported to resolve all outstanding issues. Pertinent terms of the agreement included an award of the marital home to plaintiff, contingent upon plaintiff's buyout of defendant's interest, mutual responsibility for attorney fees and costs, and joint legal and physical custody of the minor children. Plaintiff, however, moved to set aside the settlement before its entry as judgment, upon learning that defendant acquired title to the lot adjacent to the marital home—referred to by the parties as "Lot

6"—within three days of executing the agreement, and subsequently advertised for contractors to build a residence on said property. Plaintiff maintained that defendant had, without disclosure during mediation, intended to acquire and reside on Lot 6. Plaintiff further contended that it would not be in the best interests of the children for the parties to reside as neighbors.

The court scheduled the matter for trial, reserving its findings on the disputed issues. On the first day of trial, the parties placed certain settlement terms regarding property matters on the record, including an agreement to sell both the marital home and Lot 6. The parties acknowledged that custody issues remained in dispute and would require adjudication at trial. Upon conclusion of the proceedings, the trial court clarified that it had declined to approve the parties' settlement agreement, concluding that permitting the parties to reside on adjacent lots would contravene the best interests of the minor children.

On appeal, defendant contends that the trial court erred in setting aside the entirety of the settlement agreement. Defendant maintains that the trial court should have set aside only the property division provisions, leaving undisturbed the parties' agreement concerning custody of the minor children, thereby obviating the need for protracted custody proceedings.

Defendant's argument presumes that the trial court was compelled to accept the parties' custody agreement and lacked authority to reject the stipulated arrangement. This premise is without merit. Parties may not stipulate in a manner that circumvents the circuit court's authority to determine custody of minor children. See *Harvey v Harvey*, 470 Mich 186, 194; 680 NW2d 835 (2004). While courts encourage parental cooperation regarding custody, the circuit court retains jurisdiction over the child until the child attains the age of majority. The court is not permitted to adopt parental stipulations without independently determining the child's best interests. *Phillips v Jordan*, 241 Mich App 17, 21; 614 NW2d 183 (2000). Regardless of the nature of alternative dispute resolution employed, the Child Custody Act mandates that the circuit court independently determine the custodial arrangement that serves the best interests of the children. *Harvey*, 470 Mich at 187 (citation omitted). In *Harvey*, our Supreme Court further explained:

> We recognize that parents sometimes reach agreements regarding custody and visitation matters either informally through direct negotiations or through mediation procedures made available by dispute resolution organizations. Our decision does not restrict the ability of parties to address disputes through alternative dispute resolution processes. We hold only that the statutory "best interests" factors control whenever a court enters an order affecting child custody. An initial agreement between the parties cannot relieve the court of its statutory responsibility to ensure that its adjudication of custody disputes is in a child's best interests.
>
> Likewise, parties must understand that a child custody determination resulting from alternative dispute resolution processes is not enforceable absent a court order. [*Id*. at 187 n 2.]

Accordingly, defendant has not shown that he is entitled to any appellate relief on this ground. *Id*.

IV.  ATTORNEY FEES

Defendant also argues that the trial court should not have awarded plaintiff attorney fees because he did not alienate the children from plaintiff and did not engage in misconduct with regard to Lot 6.

We review a trial court's decision to award attorney fees in a divorce action for an abuse of discretion, and we review the trial court's underlying factual findings for clear error.  *Richards v Richards*, 310 Mich App 683, 699-700; 874 NW2d 704 (2015).  "An abuse of discretion occurs when the result falls outside the range of principled outcomes," and a "finding is clearly erroneous if we are left with a definite and firm conviction that a mistake has been made."  *Id*. (quotation marks and citation omitted).

This Court discussed the generally rules for the award of attorney fees in divorce cases in *Colen v Colen*, 331 Mich App 295, 300-301; 952 NW2d 558 (2020):

> "Under the 'American rule,' attorney fees are not recoverable as an element of costs or damages unless expressly allowed by statute, court rule, common-law exception, or contract."  *Reed* [*v Reed*, 265 Mich App 131, 164; 693 NW2d 825 (2005)] (citations omitted).  "In domestic relations cases, attorney fees are authorized by both statute, MCL 552.13, and court rule, [currently MCR 3.206(D)]."  *Reed*, 265 Mich App at 164.  However, "attorney fees are not recoverable as of right in divorce actions."  *Id*. [Second alteration in original.]

MCR 3.206(D) provides as follows:

> (1) A party may, at any time, request that the court order the other party to pay all or part of the attorney fees and expenses related to the action or a specific proceeding, including a post-judgment proceeding.

> (2) A party who requests attorney fees and expenses must allege facts sufficient to show that:

> (a) the party is unable to bear the expense of the action, including the expense of engaging in discovery appropriate for the matter, and that the other party is able to pay, or

> (b) the attorney fees and expenses were incurred because the other party refused to comply with a previous court order, despite having the ability to comply, or engaged in discovery practices in violation of these rules.

MCR 3.206(D)(2)(b) "considers only a party's behavior, without reference to the ability to pay." *Richards*, 310 Mich App at 701.  There is also a "common-law exception to the American rule that an award of legal fees is authorized where the party requesting payment of the fees has been forced to incur them as a result of the other party's unreasonable conduct in the course of the litigation." *Reed*, 265 Mich App at 164-165 (quotation marks and citation omitted).  A party requesting attorney fees must establish that the fees were incurred and reasonable.  *Reed*, 265 Mich App at 165-166.

In the present matter, defendant does not challenge on appeal the reasonableness of the attorney fees awarded to plaintiff by the trial court, nor does defendant contend that such fees were unrelated to services rendered by plaintiff's counsel. Rather, defendant asserts that the trial court committed factual error in concluding that defendant contributed to the children's alienation from plaintiff and engaged in misconduct with respect to the acquisition and recording of the deed to Lot 6.

As previously articulated, the record contains substantial evidence supporting the trial court's finding of misconduct by defendant in relation to the alienation of the children from plaintiff. Accordingly, the trial court's factual finding in this regard is not clearly erroneous, and the award of attorney fees to plaintiff on this ground does not constitute an abuse of discretion. See *Richards*, 310 Mich App at 699-700.

With respect to the issue concerning Lot 6, the trial court found that defendant engaged in misconduct by concealing, during mediation, his knowledge that he would be obtaining title to Lot 6, and by subsequently altering the deed to remove plaintiff's name before recording an instrument purporting to vest title solely in himself. The trial testimony of the prior owner of Lot 6 corroborated these findings. Upon review, this Court discerns no clear error in the trial court's determination. The award of attorney fees to plaintiff on this ground likewise does not constitute an abuse of discretion. See *Richards*, 310 Mich App at 699-700. Accordingly, defendant is not entitled to relief.

Affirmed. Plaintiff having prevailed is entitled to costs. MCR 7.219.

/s/ Anica Letica
/s/ Stephen L. Borrello
/s/ Michelle M. Rick